IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROHDE & SCHWARZ USA, INC.                  :

                                      :

    v.                                     :   Civil Action No. DKC 20-3744

                                        :

LONG COMMUNICATIONS LLC                    :

                                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case is the motion for summary judgment filed by Plaintiff Rohde & Schwarz USA, Inc. (ECF No. 16). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be denied.

## I.   Background

Long Communications LLC ("Long Communications") operates a small television and talk radio station (WHKY). (ECF No. 23-1, at 2) (Tom Long, Jr., Declaration). When it needed to upgrade its television transmitters and related equipment, it planned to pay for the new equipment through an FCC program that would reimburse it for the cost of the equipment. *Id.* at 2-3. Long Communications

hired Tom Long, Jr., to design and procure the equipment.[1] *Id.* at 2.

Tom Long approached Rohde & Schwarz USA, Inc. ("R&S") about purchasing the equipment for Long Communications. *Id.* at 3. Tom Long had previously helped other small television companies purchase new equipment from R&S. Those companies also needed to use funding from the FCC reimbursement program. *Id.* In those instances, R&S shipped the equipment without payment, the small companies eventually paid R&S once they received money from the FCC, and R&S did not charge late payment interest. *Id.*

Tom Long spoke with R&S's East Coast National Sales Manager about purchasing equipment for Long Communications from R&S. *Id.* From the initial communications, Tom Long told the sales manager that Long Communications was unable to pay for the equipment on its own and would need to wait to be reimbursed by the FCC before it could pay R&S. *Id.* 3-4. R&S provided Long Communications with price quotes. Tom Long subsequently submitted purchase orders on behalf of Long Communications in January, February, and March 2020. The purchase orders were signed by Tom Long and titled him as "Director of Engineering WHKY Radio and TV." ECF No. 16-3, at 2.

---

[1] That Long Communications and Tom Long share a name is not a coincidence. Tom Long is the brother of Long Communications's manager, Jeff Long. *Id.* at 3. Tom Long also possesses a passive one quarter ownership interest in Long Communications. *Id.* at 3.

After submitting the purchase orders, Tom Long continued having conversations with R&S's sales manager. *Id.* at 4-5. Mr. Long told the sales manager that, like previous clients for whom Mr. Long had arranged the purchase of equipment from R&S, Long Communications would be unable to pay R&S until it received funding from the FCC. In Tom Long's words, "[the sales manager] advised me that he understood." *Id.* at 4-5.

R&S quotes contained Terms and Conditions of Sale. Paragraph 1 of the Terms and Conditions of Sale provides:

> The Buyer's purchase order confirms acceptance of the Rohde & Schwarz USA, Inc (R&S) offer to deliver products and/or services ("Products") according to these terms, and such additional or different terms as stated in the R&S quotation. Any terms or conditions of the Buyer's order, or contained in any other communication from the Buyer, which are inconsistent with or in addition to the terms and conditions contained herein shall not be binding on either party unless expressly accepted in writing by R&S. R&S's failure to object to any provisions contained in verbal or written communications from the Buyer shall not be the acceptance thereof or a waiver of these terms and conditions.

ECF No. 16-2, at 11. Paragraph 3 of the Terms and Conditions of Sale provides:

> R&S payment terms, conditional on approved credit, are net 30 days from date of invoice unless otherwise stated in writing by R&S. An order for a System, that includes Products configured to Buyer requirements, with a price of more than $100,000 must be accompanied by a noninterest bearing down payment equal to 30% of the purchase price plus applicable

taxes. R&S has the right to modify the payment
terms after an order has been accepted if, in
R&S's opinion, the payment record or financial
condition of the Buyer so warrants, or if R&S
otherwise has grounds to feel insecure about
receiving payment. Any dispute about the
quality   or   condition,   performance   or
functioning of Products supplied, or otherwise
in connection with the terms and conditions
set out herein, shall not entitle the Buyer to
refuse to pay for the Products. Late payments
shall be subject to an interest charge of 1.5%
per month on the unpaid balance. R&S reserves
a security interest in the Products, and any
products or proceeds thereof until payment in
full has been received by R&S. R&S may perfect
its security interest by any necessary filings
in public registers, and Buyer shall cooperate
therewith as required by law until payment in
full, for the Products sold and any other
amounts owed by Buyer to R&S, has been
received.

*Id.*

In March and April 2020, R&S sent invoices for 25% down
payments to Tom Long.   ECF No. 23-1, at 5 (Tom Long, Jr.,
Declaration).   The parties do not dispute that R&S did not actually
require Long Communications to make down payments.[2]   ECF Nos. 16,
at 4; 23-1, at 5.   In April 2020, R&S began delivering some of the
equipment Long Communications had ordered.   ECF No. 23-1, at 5.
In June 2020, R&S emailed Tom Long final invoices for some of the
ordered equipment.   *Id.*

---

[2] Yet, as Long Communications points out, R&S now seeks late
payment interest on the putative down payment invoices.   ECF No.
23, at 13.

After Long Communications did not pay the invoices, R&S filed this lawsuit on December 24, 2020.  ECF No. 1.  It asserts two claims: (1) breach of contract and (2) account stated.  The complaint alleges $2,714,908.87 in damages—the value of the unpaid invoices.  Throughout 2021, however, Long Communications received funding from the FCC and paid R&S's invoices.[3]  *Id.* at 23-1, at 6. As a result, R&S is now only seeking the unpaid late payment interest.  ECF No. 26, at 11.[4]

R&S filed this motion for summary judgment on August 25, 2021. ECF No. 16.

## II.  STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*

---

[3] At the time R&S filed its motion for summary judgment, Long Communications had not paid the final invoice.  The parties agree that Long Communications has now paid all the invoices and that the only outstanding amount is the late payment interest.  ECF No. 26, at 2.

[4] The parties dispute whether R&S sent the last invoice to Long Communications in January 2021 or April 2021.  If late payment interest is calculated from the December date, then R&S claims $374,242.91 in damages as of August 17, 2021.  ECF No. 16, at 10. If late payment interest is calculated from the April 2021 date, then R&S claims only $338,950.13.  Solely for the purposes of its motion for summary judgment and conditioned on its motion being granted, R&S has conceded that Long Communications did not receive the invoice until April 2021.  ECF No. 26, at 3.

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "[S]ummary judgment should be granted only when it is perfectly clear that no issue of material fact exists." *Raynor v. Pugh*, 817 F.3d 123, 129 n.2 (4th Cir. 2016) (quotation omitted).  A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Liberty Lobby*, 477 U.S. at 248.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted), but "a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact.  No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element that she bore the burden to prove.  *Celotex*, 477 U.S. at 322–23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there

is a genuine issue for trial.  *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

## III. Analysis

Neither party disputes that a contract exists between Long Communications and R&S.  Nor does either party dispute that the text of the contract documents (i.e., the quotations, terms and conditions of sale, and purchase orders) does not contain any provision permitting delayed payment pursuant to FCC funding.  Rather, the parties dispute whether the contract was modified to permit Long Communications to withhold payment until it had been reimbursed by the FCC and to eliminate any interest otherwise due.

Under Maryland law, parties may modify a contract's terms expressly by oral agreement or impliedly through conduct.  *SumCo Eco-Contracting, LLC v. Ellicott Dredges, LLC*, No. 20-cv-2930-ELH, 2021 WL 2649799, at *10 (D.Md. June 28, 2021) (collecting cases).  Contractual limitations on future modifications are not effective to prevent parties from entering new agreements orally or by performance.  *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 88 (4th Cir. 2016) (applying Maryland contract law).  The totality of a party's actions is evaluated when determining whether modification of the contract occurred.  *Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Ctr. at Parole, LLC*, 421 Md. 94, 122 (2011).  "Assent to an offer to vary, modify or change a contract may be implied and found from circumstances and the conduct of the parties

7

showing acquiescence or agreement." *Cole v. Wilbanks*, 226 Md. 34, 38 (1961). Mutual knowledge and acceptance, whether implicit or explicit, are required to modify a contract. *Hovnanian*, 421 Md. at 120. Whether subsequent conduct of the parties amounts to a modification of their contract is generally a question to be decided by the trier of fact. *Hovnanian*, 421 Md. at 122 (quoting *University Nat'l Bank v. Wolfe*, 279 Md. 512, 523 (1977).

Long Communications argues that it has generated a genuine dispute of material fact as to whether the contract was modified orally. ECF No. 23, at 12. R&S responds that Long Communications's evidence does not establish an express agreement to modify the payment terms.[5] The two cases it cites are inapposite.

In *Cambridge Techs., Inc. v. Argyle Indus., Inc.*, the Court of Special Appeals found that silence was insufficient to show assent to modification. 146 Md.App. 415, 434 (2002). Long Communications has not argued that R&S assented through silence. In fact, its evidence is to the contrary—that R&S's agent said it "understood" when told Long Communications would not be able to pay the invoices until it received FCC funding.

---

[5] R&S also argues that there was no modification because it was not in writing. ECF No. 26, at 6. Contractual limitations on future modifications, however, are not effective to prevent parties from entering new agreements orally or by performance. *Galloway*, 819 F.3d at 88.

In *DirecTV, Inc. v. Mattingly*, the defendant modified its customer agreement without notifying its customers, as it was required to do under a notice provision of the original customer agreement.  376 Md. 302, 314.  DirecTV's failure to give notice of the modifications meant that its customers did not implicitly assent to the modified terms.  *Mattingly*, 376 Md. at 316-19.  R&S asserts that *Mattingly* stands for the proposition that "assent must be unequivocal and terms of modification must be definite, certain, and intentional."  ECF No. 26, at 7 (citing page 319 of *Mattingly*).  R&S's citation of *Mattingly* is puzzling because (1) the case does not recite such a standard and (2) there is no allegation that Long Communications attempted to modify the terms of the contract without communicating with R&S.  Moreover, it is a longstanding proposition of Maryland contract law that an agreement to modify a contract need not be "in writing or expressly stated.  'Assent to an offer to vary, modify, or change a contract may be implied and found from circumstances and the conduct of the parties showing acquiescence or agreement.'"  *Fantle v. Fantle*, 140 Md.App. 678, 688 (2001) (citing *Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 440 (4th Cir. 2001) (quoting *Cole*, 226 Md. at 38)).

In this case, R&S's sales manager responded that he understood that Long Communications could not and would not be paying the invoices until it was reimbursed by the FCC, and R&S then sent the

equipment to Long Communications without even receiving a down payment.  Mr. Long indicated that the delayed payment also meant an alteration to the interest terms.  A rational jury could find "understood" to be words of assent and the subsequent conduct of R&S to be confirmation of the modification.  *See, e.g.*, *Fantle*, 140 Md.App. at 687-88 (holding evidence that ex-spouses agreed to lower alimony payments because one ex-spouse had cash flow problems could have supported trial court finding implied or express modification).  As a result, whether the contract was modified is genuinely disputed.  R&S's motion for summary judgment will be denied.

## IV.   Conclusion

For the foregoing reasons, Plaintiff R&S's motion for summary judgment will be denied.

                              /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge
